### SOUTHERN SURETY CO. v. WEAVER et al. (No. 1075.)*

(Court of Civil Appeals of Texas. Beaumont. March 19, 1924. Rehearing Denied April 2, 1924.)

1. Pleading ⬤⟐8(18)—Allegation as to employé's scope of employment held mere conclusion.

The court should have sustained special exceptions to general allegations that deceased employé was acting within the scope of his employment and performing duties incident to his employment when he received his injuries, being mere conclusions of the pleader.

2. Appeal and error ⬤⟐1170(3)—Overruling special exceptions to general allegations held not prejudicial.

It was not prejudicial error to overrule special exceptions to general allegations of a pleading containing no specific facts, where the excepting party was not misled or surprised by proof offered, under rule 62a.

3. Evidence ⬤⟐126(2) — Statement within hour after accident held admissible as res gestæ.

A statement by an injured servant within an hour after he was scalded, as to how the injury occurred, was admissible as part of the res gestæ, where the servant at the time was suffering intensely from burns and scalds upon practically his whole body, which injuries produced his death on the same day.

4. Master and servant ⬤⟐405(5)—Finding of dependency within Compensation Act sustained by evidence.

In an action involving liability of a surety company for the death of a servant under the Workmen's Compensation Act (Complete Tex. St. 1920, or Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.), the finding by the trial court that the father and minor brothers of the deceased were dependents and entitled to compensation, held sustained by the facts and evidence.

5. Master and servant ⬤⟐386(5)—Dependent parent held not to take compensation to exclusion of dependent brothers and sisters.

A dependent parent does not take all compensation to the total exclusion of a dependent brother or sister of a deceased employé, under Complete Tex. St. 1920, or Vernon's Ann. Civ. St. Supp. 1918, art. 5246—15.

Appeal from District Court, Liberty County; J. L. Manry, Judge.

Actions by the Southern Surety Company against Gilbert Weaver and others, and by Andrew Weaver and another against the Southern Surety Company and others, consolidated. From the judgment the plaintiffs in both actions appeal. Affirmed.

McGregor, Burr & Lewis, of Houston, for appellant.

E. B. Pickett, Jr., and C. H. Cain, both of Liberty, and C. A. Lord and O. M. Lord, both of Beaumont, for appellees.

HIGHTOWER, C. J. This controversy arose upon the following facts: E. E. Weaver, who was a young man about 25 years of age and unmarried, was in the employ of C. C. Cannon, an oil driller in Liberty county, Tex., and on August 9, 1922, E. E. Weaver, while discharging the duties of his employment in firing a boiler in connection with the drilling rig, sustained injuries by reason of the explosion of the boiler, which resulted in his death on the same day some 10 or 12 hours after the injuries were sustained. Cannon was a subscriber under the Employers' Liability Act of this state (Vernon's Ann. Civ. St. Supp. 1918, or Complete Tex. St. 1920, art. 5246—1 et seq.), and carried a policy of insurance issued by the Southern Surety Company, which covered E. E. Weaver as one of Cannon's employés. E. E. Weaver left surviving him his father, Andrew Weaver, and two minor brothers, Gilbert and Clyde Weaver, as well as several other brothers and one sister, all of whom were adults, and are not concerned in this litigation.

After E. E. Weaver's death, in due time his father, Andrew Weaver, and stepmother, Mrs. Fannie Weaver, wife of Andrew Weaver, and his two minor brothers, Clyde and Gilbert Weaver, claiming to be dependents of the deceased, E. E. Weaver, filed their applications with the Industrial Accident Board of this state for an award of compensation, and, after due notices by and to all parties concerned, the Industrial Accident Board made its award on the 8th of February, 1923, in favor of the two minor brothers, Gilbert and Clyde Weaver, against the Southern Surety Company, allowing them compensation at the rate of $15 per week for a period of 360

═══════

weeks, and denying any compensation to the father, Andrew Weaver, or the stepmother, Mrs. Fannie Weaver. Being dissatisfied with the award in favor of Gilbert and Clyde Weaver, the Southern Surety Company gave due notice that it would not abide by the award, and in due time and after due notice filed suit in the district court of Liberty county to set that award aside. Andrew Weaver and wife, Mrs. Fannie Weaver, being dissatisfied with the action and judgment of the Industrial Accident Board in denying them compensation, gave due notice to all parties concerned that they would not abide by such award, and in due time filed suit in the district court of Jefferson county to set such judgment aside. Thereafter the suit filed by Andrew Weaver in Jefferson county was transferred to the district court of Liberty county. After answer and cross-action by Gilbert and Clyde Weaver, and all necessary pleadings in the case of Andrew Weaver and wife against Southern Surety Company, the two causes were consolidated by order of the district court of Liberty county, and proceeded to judgment as a consolidated cause before that court. The cause was tried before the court without a jury, and resulted in a judgment against the plaintiff Southern Surety Company that it take nothing by its suit. The court further rendered judgment in favor of Andrew Weaver against the Southern Surety Company at the rate of $7.50 per week, beginning on August 9, 1922, and continuing thereafter for a total period of 360 weeks, and also rendered judgment in favor of Gilbert and Clyde Weaver jointly at the rate of $7.50 per week, beginning August 9, 1922, and continuing thereafter for a total period of 360 weeks, and further adjudged that Mrs. Fannie Weaver take nothing. The judgment further apportioned the recovery in favor of Gilbert and Clyde Weaver, four-fifths to them and one-fifth to their attorneys, and also apportioned the recovery in favor of Andrew Weaver, two-thirds to him and one-third to his attorneys. From the judgment so rendered and entered, all parties gave notice of appeal to this court, and the Southern Surety Company and Andrew Weaver and wife perfected their appeal, but Gilbert and Clyde Weaver did not perfect their appeal.

We shall first dispose of the contentions made by the appellant Southern Surety Company as against all other parties. These contentions are based upon the rulings made by the trial court on exceptions interposed by the Southern Surety Company to the pleadings of its adversaries and upon rulings of the trial judge as to the admissibility of evidence and upon the insufficiency of the evidence to sustain the finding of the trial court that either Andrew Weaver, the father, or Gilbert or Clyde Weaver, the two minor brothers, were dependents upon E. E. Weaver,

the deceased, in contemplation of the Workmen's Compensation Act of this state.

It was alleged, in substance, both by Andrew Weaver and wife, and Gilbert and Clyde Weaver, that E. E. Weaver, the deceased, met his death in consequence of injuries sustained by him on the 9th day of August, 1922, while in the employ of C. C. Cannon, and that such injuries were received while E. E. Weaver was performing duties in the course of his employment, and that such injuries arose out of and were connected with his employment. No specific facts were stated either as to the character of the injuries or just how they came to be sustained, but merely the general statement, as we have shown, that he received injuries, while in the employment of Southern Surety Company, that resulted in his death on the same day. Nor did the pleadings of Andrew Weaver and wife, nor that of Gilbert and Clyde, state any specific facts showing that E. E. Weaver was performing duties within the course of his employment at the time he received the injuries, but such pleadings merely alleged generally, and, it might be said, stated the conclusion of the pleader, that the injuries were received while E. E. Weaver was acting within the scope of his employment and performing duties incident to his employment. To these general allegations the Southern Surety Company specially excepted as follows:

"Plaintiff specially excepts to said allegations because it does not set out the facts in the manner and in the way in which the said E. E. Weaver is alleged to have been injured, and as a result of which injuries he died, with that legal certainty that would show that he received such injuries in the course of his employment, so as to enable plaintiff to prepare its defense and to meet defendants' proof."

And substantially the same special exception was directed against the general allegations that E. E. Weaver was performing duties within the course of his employment at the time of sustaining such injuries.

[1, 2] These special exceptions were overruled by the trial court, and its action is assigned by the Southern Surety Company as error. We think the trial court should have sustained these special exceptions, because it is apparent that nothing more than the general statement made by the pleader that E. E. Weaver was injured was made by the pleadings excepted to, and it is equally manifest that nothing more than a general statement by the pleader was made that at the time such injuries were sustained E. E. Weaver was acting within the scope of or performing the duties of his employment. No specific facts in either connection were stated, and as against a special exception such pleading was vulnerable. The error of the court in overruling these exceptions was not, however, prejudicial to appellant Southern

Surety Company. It is not contended in the brief of that appellant that it was in the least misled or surprised by proof offered against it showing the nature of the injuries sustained by E. E. Weaver, nor was it surprised by any evidence offered to show that E. E. Weaver was performing the duties of his employment at the time he sustained the injuries. It is perfectly clear from the whole record and is practically undisputed that E. E. Weaver was in the employ of C. C. Cannon, and was performing the duties of his employment as boiler fireman at the time he was injured, and that he was injured while undertaking to blow out the boiler when some attachment on the boiler gave way and steam was thereby permitted to escape in great volume, which severely burned and scalded E. E. Weaver, and to such an extent that he died on the same evening thereafter. There would be no reason or common sense in reversing this case for the error of the trial court in declining to sustain these special exceptions, because it is apparent. that no injury resulted either in the presentation of its case in the lower court or in this court by the appellant Southern Surety Company. Therefore, under rule 62A, applicable to our Courts of Civil Appeals, we hold that the error was clearly harmless, and decline to reverse this judgment for that reason.

[3] The next contention made by the appellant Southern Surety Company is to the action of the court in admitting certain evidence of the witness Ray Weaver. Ray Weaver, a young man about 23 years of age at the time of this trial, and who was a brother of E. E. Weaver, deceased, was permitted to testify, over the objection of appellant Southern Surety Company, that E. E. Weaver told him, Ray Weaver, about an hour after the injury sustained by the deceased, how he was injured, that is, that he was making an attempt to blow out the boiler which he was firing, and that some connection or attachment of the boiler gave way or came loose, and that the steam from the boiler covered him and scalded him all over. This evidence was objected to on the ground that it was hearsay. The undisputed facts in this record show, and Ray Weaver testified, that at the time this statement was made by the deceased to Ray Weaver the deceased was suffering intensely from the burns and scalds upon practically his whole body, and that he was then in a physician's office at Sour Lake, a few miles removed from the scene of the injury, and, further, the undisputed record shows that the statement to Ray Weaver was made within an hour after the injuries were sustained. Under this showing, the statement made by E. E. Weaver to Ray Weaver was admissible as res gestæ, and the entire record negatives beyond any doubt any conclusion that such statement by E. E. Weaver was made be-

cause of any feeling of self-interest on his part or hope of gain of any nature whatever. On the contrary, the statement was made while he was suffering extremely from injuries which produced his death on the same evening between 10 and 12 hours later. We have no doubt that the court was correct in admitting this evidence under the authorities of this state. Dallas Hotel Co. v. Fox (Tex. Civ. App.) 196 S. W. 652, and authorities there cited; Lumbermen's Reciprocal Association v. Adcock (Tex. Civ. App.) 244 S. W. 645, and authorities there cited.

The next contention made by the appellant Southern Surety Company is that there was no evidence introduced upon the trial sufficient to show that either Andrew Weaver or Gilbert or Clyde Weaver were dependents of E. E. Weaver, deceased, and that therefore judgment should have been rendered in appellant's favor, and, the trial court having declined to render such judgment, that this court should reverse the trial court and render judgment here in favor of the appellant. What we shall say in disposing of this contention of appellant Southern Surety Company will also serve as a statement of the facts upon which we shall dispose of the contentions between Andrew Weaver, the father of deceased, and Gilbert and Clyde Weaver, his two minor brothers.

The facts relating to the dependency of any of the parties claiming compensation are practically without dispute in this record, and therefore all we are called upon to do is to determine whether the facts are legally sufficient to show that the father, Andrew Weaver, and the two minor brothers of the deceased were dependent upon him for contributions and support as the trial court found.

Andrew Weaver, father of deceased, is about 66 years of age, and is physically infirm and partially crippled. The facts show that he sustained an injury while horseback riding many years ago that has seriously affected him in after life, and also that he has suffered from kidney and bladder trouble for the last 10 or 12 years. He owns 140 acres of land lying partly in Chambers and partly in Liberty county, which is assessed for taxation at $6 an acre. Only 14 acres' of this tract of land is in cultivation, upon which Andrew Weaver raises such crops as corn, peas, and potatoes, from which he realizes very little money. He owns 3 head of horses of very little value, and about 20 head of cattle, estimated to be worth about $20 a head. He lives on the tract of land, and in connection with his home has a little grocery store, and keeps on hand from $300 to $400 worth of groceries. From this little store his net profits are between $10 and $15 a month. He is physically unable to work the little 14-acre farm, and when that is cultivated it is done through hired labor. E. E. Weaver, the deceased, had been contributing

to his father several years prior to his death, and especially the last two years prior to his death. These contributions, as found by the trial court, were not made at regular intervals, but when made they were substantial contributions, and tended greatly to the support and maintenance of Andrew Weaver and his present wife, who is the stepmother of deceased, and, as found by the trial court, the father relied upon deceased for these contributions, and expected them to be continued. Outside of the property that we have mentioned, both real and personal, Andrew Weaver has no other so far as this record shows. He testified that E. E. Weaver contributed on an average as much as $50 a month to his support, sometimes more and sometimes less than that amount per month. Upon these facts the trial court found that Andrew Weaver was partially dependent upon E. E. Weaver, and we have no doubt that under the Compensation Act of this state, as construed by our own courts, the trial court was correct in holding that Andrew Weaver was entitled to compensation as a dependent of E. E. Weaver.

As to the contention that the trial court was in error in finding and holding that Gilbert and Clyde Weaver were not shown to be dependent, the following undisputed facts may be stated:

Gilbert and Clyde Weaver and the deceased, E. E. Weaver were own brothers. Their mother died in February, 1920, and their father, Andrew Weaver, married again in July, 1922. Shortly after the death of the mother of Gilbert and Clyde Weaver they went to live with their sister, Miss Florence Weaver, a single woman about 28 years of age, who was living at Anahuac in Chambers county, and had employment there in one of the banks. Shortly afterwards, the father, Andrew Weaver, left his little farm and went to Anahuac to live with Miss Florence and Gilbert and Clyde in the home of Miss Florence, which she had bought and was paying for. Andrew Weaver lived with them there until about July, 1921, and during the time he lived there he bought most of the groceries that were consumed by the family, and defrayed largely the household expenses. When he left in July, he went back to his little farm, and, thereafter, as shown by this record, he contributed practically nothing to the support of Gilbert or Clyde; they remaining with their sister, Miss Florence, at Anahuac. At the time of the trial, Gilbert was about 16 years of age, and Clyde about 14 years of age. Gilbert is a permanent cripple, having received an injury to his hip when about 7 years of age, and has been lame ever since. Clyde for the past several years has been seriously affected with heart trouble, known as leaky valves of the heart, and he is of very slight physique, weighing only about 60 pounds at 14 years of age. Neither Gilbert nor Clyde has any property of any kind, and nobody has contributed to the support of either of them except their sister, Miss Florence, and deceased, since they went to live with her, with the exception of the few months that their father contributed to their support while he stayed in the home of Miss Florence, as before stated. Miss Florence Weaver, according to this record, has contributed more largely to their support than any one else, but it is also true, as shown by the undisputed facts in this record, that the deceased, E. E. Weaver, also contributed to the support of Gilbert and Clyde by furnishing them with clothes and shoes and small cash contributions, not exceeding, however, $5 at any one time to either of them, and it is also true that such contributions as he made to them prior to the year 1922 were of very little value and practically insignificant, but commencing in the spring of that year, this record shows that E. E. Weaver furnished practically all the clothes and shoes that Gilbert and Clyde had during that year, and he told Miss Florence Weaver that whenever these minor brothers needed anything to let him know and call upon him, and that he would furnish what they needed. Acting upon this suggestion from E. E. Weaver, Miss Florence Weaver did let him know in the early spring of 1922 that the boys needed clothes and shoes and other little necessaries in their humble station in life, and that E. E. Weaver responded and furnished what she called for. E. E. Weaver, at the time of his death, was earning about $150 a month, and Miss Florence Weaver, according to our understanding of the record, was making about $100 a month. It is very clear to us that these two minor brothers of the deceased were dependent upon some person for support, especially in view of their crippled and weakened conditions, and it is also very clear, when we consider this record as a whole, that their support was coming from Miss Florence Weaver and the deceased, E. E. Weaver, though perhaps the larger portion of it was furnished by Miss Florence Weaver, but that they were partially dependent at least upon E. E. Weaver for support, and that they were, in fact, partially supported by him, and that they relied upon him to some extent for support, there can be no doubt. We shall not go into a discussion in detail of the authorities as to what constitutes dependency.

In Southern Surety Co. v. Hibbs, 221 S. W. 303, the San Antonio Court of Appeals, speaking through Chief Justice Fly, among other things, said:

"The test of dependency is, not whether the family could support life without the services or contributions of the deceased, but whether they depended upon them as part of their income or means of living. * * * All the cases seem to hold that partial dependency is all that is required, and a mere temporary intermission in the performance of services or the

making of contributions will not destroy dependency."

See, also, Millers' Indemnity Underwriters v. Green (Tex. Civ. App.) 237 S. W. 979; Texas Employers' Ins. Ass'n v. Peterson (Tex. Civ. App.) 251 S. W. 572; Consolidated Underwriters v. Free (Tex. Civ. App.) 253 S. W. 946; Lumbermen's Reciprocal Ass'n v. Warner (Tex. Civ. App.) 234 S. W. 545; Lumbermens' Reciprocal Ass'n v. Warner (Tex. Com. App.) 245 S. W. 664.

[4] Under the authorities noted, we have no doubt that upon the facts as developed in this case the trial court was correct in holding that the father, Andrew Weaver, and the two minor brothers of the deceased E. E. Weaver, Gilbert and Clyde Weaver, were dependents as intended by the Compensation Act of this state, and in allowing them recovery accordingly. It follows that it is our conclusion that all assignments of error made by the appellant Southern Surety Company should be overruled, and it is so ordered.

[5] We shall now proceed to the controversy here between Andrew Weaver and Gilbert and Clyde Weaver. The appellant Andrew Weaver makes the contention, in substance, that the trial court, after having determined from the evidence that Andrew Weaver was a dependent parent of the deceased E. E. Weaver, the judgment should have been in his favor for all the compensation recoverable in this case, to the entire exclusion of Gilbert and Clyde Weaver, even if the trial court was authorized to find as a fact that they were also dependents. In other words, it is the contention of appellant Andrew Weaver that the partially dependent father, Andrew Weaver, was in a class ahead of the minor brothers, Gilbert and Clyde, and that, such being the law, all the compensation recoverable in this case must come to him, because Gilbert and Clyde Weaver were not in a class with the dependent father, but in the very last class of persons permitted to take compensation, and could not be reached in this case as long as the dependent father, Andrew Weaver, was present to take the compensation. The statute upon which appellant Andrew Weaver relies as supporting this contention is article 5246—15, Complete Texas Statutes, which reads as follows:

"The compensation provided for in the foregoing section of this act shall be for the sole and exclusive benefit of the surviving husband who has not for good cause and for a period of three years prior thereto abandoned his wife at the time of the injury, the wife who has not at the time of the injury without good cause and for a period of three years prior thereto abandoned her husband and the minor children, without regard to the question of dependency, dependent parents and dependent grandparents and dependent step-mothers and dependent children or dependent brothers and sisters of the deceased employé, and the amount

recovered thereunder shall not be liable for the debts of the deceased nor the debts of the beneficiary or beneficiaries, and shall be distributed among such beneficiaries as may be entitled to same as hereinbefore provided according to the laws of descent and distribution of this state; and provided such compensation shall not pass to the estate of the deceased to be administered upon, but shall be paid directly to said beneficiaries when the same are capable of taking, under the laws of the state, or to their guardian or next friend, in case of lunacy, infancy or other disqualifying cause of any beneficiary. And the compensation provided for in this act shall be paid weekly to the beneficiaries herein named and specified, subject to the other provisions of this act."

Counsel for appellant Andrew Weaver contend that it was the intention of the Legislature in enacting the quoted statute to give to a dependent parent of an unmarried employé all compensation that might be due and recoverable upon the death of the employé, to the total exclusion of dependent brothers and sisters of the employé, simply because the parent is named in advance of the brothers and sisters in the arrangement of the article. It would have been quite easy for the Legislature to have said expressly that a dependent parent should take to the total exclusion of a dependent brother and sister if it had been the intention to so provide, but the Legislature did not do that, nor do we believe that, taking the article as a whole, such intention should be implied. If counsel's contention be correct, then it would follow that a stepmother of the employé, if found dependent, would be entitled to take all compensation due for his death, and minor brothers and sisters, who are of his own flesh and blood, would be totally excluded. We do not believe that the Legislature intended such an unnatural and unreasonable thing. So far as we know, no court in this state has decided this precise point here raised. We have read all the cited cases in all the briefs before us, but as we construe them none of them decide this precise point. All of those cited by counsel for Gilbert and Clyde Weaver only go to the extent of holding that the compensation recoverable for the death of an employé under the act shall be distributed according to the law of descent and distribution of this state, and it would serve no useful purpose to here discuss those cases. We therefore construe the article above quoted as we believe the Legislature intended it to be construed, and have reached the conclusion that simply because a dependent parent is mentioned before a dependent brother or sister of an employé that it does not mean that the parent shall take to the total exclusion of the dependent brother or sister. This is our construction of the law, and, right or wrong, we so declare. It follows that the first contention of appellant Andrew Weaver must be overruled.

The next contention made by Andrew Weaver is that the evidence was wholly insufficient to justify the trial court's finding that Gilbert and Clyde Weaver were dependents of E. E. Weaver. What we said in disposing of that same contention made by the Southern Surety Company will dispose of this contention made by appellant Andrew Weaver, and we shall not go into further detail of the evidence touching this contention.

It follows that it is the opinion of this court that the judgment of the trial court should be affirmed, and it has been so ordered.